*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DONALD OTTOBRE,

      Plaintiff-Appellant,

v

CRAIG FIKE and JACK FIKE,

      Defendants-Appellees.

UNPUBLISHED
December 11, 2025
10:41 AM

No. 373550
Mecosta Circuit Court
LC No. 23-027028-NO

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Plaintiff-appellant, Donald Ottobre, proceeding *in propria persona*, appeals as of right the trial court's order granting summary disposition in favor of defendants-appellees, Craig Fike and Jack Fike, and ordering Ottobre to pay defendants' attorney fees in the amount of $18,945 and costs of $992 for filing a frivolous and retaliatory lawsuit. We affirm.

## I. BASIC FACTS

This appeal stems from Ottobre's complaint against defendants for trespass, nuisance, and negligence filed on August 21, 2023. In the complaint, Ottobre alleged that a barbed wire from a fence on defendants' property became dislodged and intruded onto Ottobre's adjacent property. According to the complaint, on January 4, 2021, Ottobre was walking on his property when he fell over the wire, which was hidden by recent snowfall, and sustained an injury to his shoulder.

The location in which Ottobre alleged to have fallen has been the subject of contentious litigation between the parties. The parties own adjacent parcels in Mecosta County, Michigan. In November 2018, Ottobre filed two complaints against defendants to the Department of Natural Resources, claiming that defendants crossed the property line and cut down trees on Ottobre's property and that defendants had a hunting blind that violated height restrictions. Both complaints were closed without action. In the same month, Ottobre filed an affidavit and claim against Craig Fike in the Small Claims Division of the 77th Judicial District, disputing the location of the common boundary between the adjacent properties. The case was removed to circuit court, wherein the parties submitted competing property surveys to establish the boundary line of the properties.

-1-

On January 5, 2021, the circuit court granted summary disposition in defendants' favor. On April 16, 2021, the circuit court entered a final judgment and order which declared the boundary line asserted by defendants was the correct boundary line and authorized defendants to relocate a cattle fence. Ottobre appealed the decision to this Court. On December 15, 2022, a panel of this Court rejected Ottobre's claims of error and affirmed the circuit court's orders granting relief in Fike's favor. *Fike v Ottobre*, unpublished per curiam opinion of the Court of Appeals, issued December 15, 2022 (Docket No. 359892).

The parties' disputes did not resolve with the conclusion of the boundary-line litigation. On April 25, 2023, defendants' attorney sent Ottobre a cease-and-desist letter which stated defendants believed Ottobre and his fence continued to encroach on their property contrary to the circuit court's order and appellate decision. The letter ordered Ottobre to stop trespassing on defendants' land and informed Ottobre that he had the right to remove his fence from the property determined to be defendants' land by June 1, 2023.

Shortly after sending the cease-and-desist letter, defendants received a letter dated May 23, 2023, from attorneys representing Ottobre regarding a personal-injury claim that occurred on January 4, 2021. The letter stated Ottobre was walking his property and fell on a wire protruding from a fence on defendant's property. This was the first time defendants had heard of the fall and injury.

Apparently Ottobre did not remove the fence by the specified date, and defendants removed the fence from their property. Ottobre called the police on defendants at least four times. On June 14, 2023, Ottobre filed a police report against defendants for removing the fence. In his interview with police officers, Ottobre represented that the boundary-line dispute that had already been resolved was still ongoing in the circuit court. On June 26, 2023, Craig Fike filed a police report against Ottobre for trespassing and the Mecosta Sheriff's Office issued trespassing charges against Ottobre.

On September 12, 2023, Ottobre filed for a personal protection order ("PPO") against Craig Fike in neighboring Isabella County Trial Court. The court denied the PPO, and Ottobre requested a hearing. At the hearing on Ottobre's request for a PPO, Ottobre argued at length that he believed the circuit court wrongly decided the boundary-line dispute against him. Ottobre also accused Craig of shooting at him, brandishing a weapon at him, driving recklessly near him, and trespassing on Ottobre's property. The court affirmed its decision to deny the PPO and admonished Ottobre for forum-shopping in a neighboring county.

On August 21, 2023, Ottobre filed the complaint for trespass, nuisance, and negligence against defendants. After defendants answered the complaint, the parties engaged in discovery. In May 2024, plaintiff's counsel moved to withdraw from the case, citing a complete and irreparable breakdown of the attorney-client relationship. At a hearing on this motion, the trial court permitted plaintiff's counsel to withdraw without objection from Ottobre. Thereafter, the parties completed discovery and Ottobre proceeded throughout the remainder of the case *in propria persona*.

On September 27, 2024, defendants moved for summary disposition of all of Ottobre's claims under MCR 2.116(C)(8) and (C)(10) and requested sanctions against Ottobre for filing a

frivolous lawsuit. In their briefing, defendants explained the contentious history of litigation and the property dispute between the parties. Ottobre responded to the motion by filing a "Statement of Facts" that was difficult to discern and primarily sought to relitigate the boundary-line dispute. The trial court granted defendants' motion for summary disposition after concluding Ottobre failed to present evidence that his injury related to a condition on the property. The trial court also sanctioned Ottobre to pay $18,945 in attorney fees and $991.60 in costs after concluding that Ottobre filed a frivolous lawsuit against defendants. This appeal follows.

## II. ANALYSIS

On appeal, Ottobre, acting *in propria persona*, has presented several arguments to this Court with little to no explanation. Ottobre's Statement of the Questions Presented and substantive briefing, to the extent he provides any briefing, are incomplete, unclear, and redundant. From his appellate briefing, Ottobre appears most interested in relitigating the boundary-line dispute. Ottobre primarily relies on various pictures of the fence on the disputed property without a clear explanation of the relevance of these pictures. Individuals appearing *in propria persona* are entitled to a degree of leniency when this Court construes their pleadings; however, they are not exempt or excused from supporting their claims. See *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021) (holding that litigants appearing *in propria persona* are entitled to some leniency); but see *Bachor v Detroit*, 49 Mich App 507, 512; 212 NW2d 302 (1973) ("Appearance in pro per does not excuse all application of court rules . . . .").

The deficiencies in Ottobre's brief make it difficult to discern his claims of error and any rationale underlying those claims of error. As far as we can discern from Ottobre's appellate brief, Ottobre asserts four claims of error: (1) the trial court abused its discretion by permitting plaintiff's counsel to withdraw from the case; (2) the trial court erred by failing to start the proceedings with an oath; (3) the trial court erroneously believed that a picture provided by defendants depicted the location where Ottobre fell; and (4) the trial court erred by sanctioning Ottobre. Ottobre has provided no substantive analysis and cites no authority to support any of his assertions. "A party abandons an issue by failing to address the merits of his or her assertions." *Airgas Specialty Prods v Mich Occupational Safety & Health Admin*, 338 Mich App 482, 515; 980 NW2d 530 (2021). "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Id.* (quotation marks and citation omitted). Each of these claims of error has been abandoned. See *id.* Regardless, if we were to review these claims of error, we would conclude each is without merit.[1]

### A. PLAINTIFF COUNSEL'S WITHDRAWAL

---

[1] To the extent that Ottobre's appellate brief purports to raise any additional issues beyond the four we identified, those issues are abandoned for failure to address the merits of those claims or provide supporting authority. See *Airgas Specialty Prods*, 338 Mich App at 515.

Ottobre argues generally and without citation to caselaw or authority that he was prejudiced when the trial court permitted his counsel to withdraw from the case.[2] We disagree.

A trial court's decision regarding an attorney's motion to withdraw is reviewed for an abuse of discretion. *In re Withdrawal of Attorney*, 234 Mich App 421, 431; 594 NW2d 514 (1999). A court has not abused its discretion if its decision falls within the range of reasonable and principled outcomes. *Maldanado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). An attorney who has entered an appearance in a case may withdraw from the action or be substituted for by leave of the court. MCR 2.117(C)(2). The Michigan Rules of Professional Conduct are applicable to attorney discipline proceedings and, therefore, do not expressly apply to a counsel's motion to withdraw. However, courts will consider a request to withdraw within the framework of the professional code. *In re Withdrawal of Attorney*, 234 Mich App at 432. Under MRPC 1.16(b), an attorney may withdraw if "withdrawal can be accomplished without material adverse effect on the interests of the client." Even if withdrawal will materially affect the interests of a client, counsel can withdraw if "good cause for withdrawal exists." MRPC 1.16(b)(6). An attorney has good cause to withdraw when there has been a total breakdown in the attorney-client relationship. See *Ambrose v Detroit Edison Co*, 65 Mich App 484, 488; 237 NW2d 520 (1975).

The record reflects that plaintiff's counsel moved to withdraw in June 2024, citing a breakdown in the attorney-client relationship. At the hearing on the motion, plaintiff's counsel again stated there was a breakdown in the relationship and noted that he referred plaintiff to another attorney. Plaintiff's counsel did not elaborate on the issue of the breakdown, but Ottobre himself appeared to state that the breakdown in relationship related to the veracity of his claims when he was questioned by the trial court: "Well, I didn't really realize that, so I am still–he said that I made a statement, which I didn't, I didn't [inaudible] where I fell, or what I fell on, and I just don't understand why." The trial court permitted plaintiff's counsel to withdraw from the case on July 1, 2024, without objection from Ottobre. Thereafter, Ottobre was deposed and proceeded in the lower court without counsel. Defendants moved for summary disposition nearly three months later on September 27, 2024. Ottobre responded to these motions on his own. He did not request an adjournment to retain counsel.

The trial court did not abuse its discretion by granting the motion to withdraw. The trial court was provided with evidence of a total breakdown in the attorney-client relationship and Ottobre did not indicate that he objected to counsel's removal. Further, there were no immediate proceedings for which Ottobre was left to represent himself without the opportunity to retain new counsel. Ottobre has not otherwise identified how he could have been prejudiced by the trial court's decision to grant the motion to withdraw. From this record, the trial court's decision was

---

[2] Ottobre also failed to preserve this issue by raising it in the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Under the "raise-or-waive" rule, unpreserved issues in civil cases are waived and need not be reviewed on appeal. *Tolas Oil & Gas Exploration Co v Bachs Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). Consequently, in addition to being abandoned, this issue is waived on appeal.

within the range of reasonable and principled outcomes. See *In re Withdrawal of Attorney*, 234 Mich App at 431.

## B. ISSUES RELATED TO THE SUMMARY DISPOSITION PROCEEDINGS

Ottobre asserts two claims of error that appear to relate to the trial court's conduct during the summary disposition proceedings. First, Ottobre argues that the trial court erred because it "did not start the court with an oath (swearing in)."[3] Second, Ottobre argues that the trial court erred because it erroneously believed a picture presented during the summary disposition hearing was the location in which Ottobre fell. Neither claims have merit.

This Court reviews de novo a decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court's order states it granted summary disposition in defendants' favor under both MCR 2.116(C)(8) and (C)(10); however, because the trial court considered evidence outside the pleadings, review is appropriate under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 120 (emphasis omitted). The trial court properly grants summary disposition when the moving party establishes, except for the amount of damages, there is no genuine issue as to any material fact. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

First, Ottobre argues the trial court erred because it "did not start the court with an oath (swearing in)." Presumably, Ottobre is referring to the trial court's conduct during the summary disposition hearing at which it granted summary disposition in defendants' favor. It is apparent from the record that the trial court did not administer an oath at the start of the motion hearing. However, Ottobre has identified no court rule or other authority which requires the trial court to begin a summary disposition hearing by administering an oath, nor has Ottobre elaborated on this argument. See *Airgas Specialty Prods*, 338 Mich App at 515. Outside of some formal oath at the beginning of the hearing, no individuals testified such that they would be required to be sworn in during the hearing. Ottobre also fails to explain any prejudice he suffered because the trial court did not administer an oath at the beginning of the motion hearing. This issue is without merit and is abandoned. See *id*.

Second, Ottobre argues that the trial court erred by granting summary disposition in defendants' favor. Ottobre's arguments primarily focus on issues previously litigated in the property-line dispute and PPO proceedings. For example, Ottobre states in his appellate briefing "Craig Fike started harassing me on 6/9/2019 before any lawsuits, Craig was pull out C posts and t post off the boundary line. This has went on for 5 plus years when is Craig going to quite [sic]," "Sikkema LCM came back and only move his markers and went back and wrote up another survey

---

[3] Like the withdrawal of counsel issue, Ottobre failed to preserve this issue by raising it in the trial court. *Glasker-Davis*, 333 Mich App at 227. As previously noted, under the "raise-or-waive" rule, unpreserved issues in civil cases are waived and need not be reviewed on appeal. *Tolas Oil & Gas Exploration Co*, 347 Mich App at 289. Consequently, in addition to being abandoned, this issue is waived on appeal.

is Sikkema a professional?  Both surveys are more than 1/50000 off," and "Taking down boundary line fence 60 years old, Michigan law is 15 years on boundary line.  Albert Garbowski 1962 agreed. Doyle Fike 1966 agreed it is the boundary line.  Jack Fike 1994 also honored it as the boundary line.  No the Fikes did not have my consent to take the fence out."  These arguments, although difficult to discern, all relate to the property-line dispute and PPO proceedings and appear to be an attempt to relitigate issues settled in those proceedings.  They are not relevant to the issue that was decided by the trial court, i.e., whether Ottobre presented a genuine issue of fact regarding his claims of trespass, nuisance, and negligence in relation to the wire he tripped over.

The only argument Ottobre makes on appeal related to the trial court's decision to grant summary disposition is his argument that defendants and the trial court wrongly believed that the location where Ottobre fell was in a picture that depicts a T-Post on defendants' property.[4]  This argument is contradicted by the record.  At the hearing, defendants presented a picture of a T-Post to the trial court and stated that they believed it depicted the location where Ottobre fell.  The trial court did not accept that the picture depicted where Ottobre fell.  Instead, the trial court asked Ottobre if the picture depicted where he fell, which Ottobre answered in the negative.  Thereafter, Ottobre offered a confusing explanation in which he stated that he fell in an area adjacent to what was depicted in the picture.  The trial court asked Ottobre if he had a picture of the wire he fell over.  Ottobre did not have a picture of the wire despite previously stating that he immediately took a picture of the wire when he fell.

Evident from this record, the trial court did not simply believe that the location in which Ottobre fell was in the picture defendants provided at the hearing, nor was any such misconception the basis for the trial court's decision to grant summary disposition in defendants' favor.  Instead, the trial court granted summary disposition in defendants' favor because no evidence was presented connecting the alleged injury to the claimed negligence.  See *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (explaining that under MCR 2.116(C)(10), the moving party may carry its initial burden by "demonstrat[ing] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.") (quotation marks and citation omitted).  Ottobre does not challenge this determination on appeal, and this Court is not required to make his arguments for him.  See *Airgas Specialty Prods*, 338 Mich App at 515.  Ottobre has failed to demonstrate his entitlement to reversal.  Therefore, we affirm the trial court's order granting summary disposition.

## C.  SANCTIONS

Finally, Ottobre appears to contest the trial court's decision to sanction Ottobre $18,945 for defendants' attorney fees and $992 in costs.  We disagree.

"We review for clear error the circuit court's decision to impose sanctions on the ground that an action was frivolous within the meaning of MCR 2.625(A)(2) and MCL 600.2591." *Ladd v Motor City Plastics Co*, 303 Mich App 83, 103; 842 NW2d 388 (2013).  "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite

---

[4] Ottobre appears to make no arguments in relation to the trespass and nuisance claims on appeal.

and firm conviction that a mistake has been made." *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002). "To the extent that the trial court had discretion to order a sanction, this Court reviews the trial court's exercise of discretion for abuse." *Tolas Oil & Gas Exploration Co*, 347 Mich App at 319.

In support of his argument, Ottobre only invokes the American Rule, which generally provides that attorney fees are not recoverable unless a statute, court rule, or common-law exception provides to the contrary. See *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). Consistent with the American Rule, the court rules authorize recover of attorney fees for filing a frivolous action.

MCR 2.625(A)(2) provides that "if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591(1) provides that "[u]pon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." As defined by that statute, a civil action or defense is frivolous if "[t]he party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party." MCL 600.2591(3)(a)(*i*). A filing may be frivolous when it was asserted for an improper purpose, even if the action was otherwise supported by facts and law. See *New Covert Generating Co, LLC v Covert Twp*, 334 Mich App 24, 96-97, 964 NW2d 378 (2020) (noting that the trial court can sanction a party for a filing that was not supported by the law or that was imposed for an improper purpose). "The determination whether a claim or defense is frivolous must be based on the circumstances at the time it was asserted." *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008) (quotation marks and citation omitted).

Following its decision to dismiss Ottobre's complaint, the trial court sanctioned Ottobre for filing a frivolous complaint. The trial court based its finding of frivolity on its determination that Ottobre filed the complaint in retaliation against defendants. The record evidence supports the finding that Ottobre primarily brought this action for the improper purpose of harassing defendants. MCL 600.2591(3)(a)(*i*). Review of the record shows that Ottobre claimed he was injured by tripping over the wire protruding from defendants' fence on January 4, 2021. Significantly, at the time of the fall, the parties were engaged in a boundary-line dispute, which revolved around who owned the property where Ottobre alleged he fell. The parties' boundary-line dispute was resolved in defendants' favor when the circuit court entered a final judgment and order on December 22, 2021. Thereafter, a panel of this Court affirmed the trial court's judgment on December 15, 2022. See *Fike*, unpub op at 1. At no point during the pendency of that litigation did Ottobre mention his fall and injury. Instead, he waited over two years after the alleged injury occurred and only after the dispute was resolved in defendants' favor to mention the claim.

After the boundary-line case was resolved, the relationship between the parties remained contentious. On April 25, 2023, defendants sent Ottobre a cease-and-desist letter ordering him to stop trespassing on the property and to remove his fence from defendants' property. Shortly after the cease-and-desist letter was sent, Ottobre brought up the fall and injury for the first time in a letter threatening suit against defendants on May 23, 2023. Around the time Ottobre finally brought the injury to defendants' attention, Ottobre had called the police on defendants several

times and had filed a police report against defendants claiming that they were trespassing on his land. In the police report, Ottobre represented to the police officer that the boundary-line dispute was still ongoing in the circuit court, despite it already being resolved in defendants' favor. Ottobre had also been charged with trespassing on defendants' property. Finally, Ottobre filed for a PPO against defendants, choosing to forum-shop in neighboring Isabella County.

In both the PPO proceedings and the proceedings in this case, Ottobre continuously attempted to relitigate the boundary-line dispute. He expressed his continued belief that he owned the property at issue and the surveys relied on by the circuit court in the boundary-line dispute were wrong. Even in his appellate briefing in this case, Ottobre's arguments primarily concern his belief that he owns the property.

Plain from this record, the parties have a lengthy history of contentious litigation revolving around the boundary-line dispute, and Ottobre continues to believe that he owns the property. These facts, combined with the timing of Ottobre's personal-injury complaint and the multiple complaints and police report Ottobre filed against defendants, support the trial court's determination that Ottobre filed this complaint to harass defendants. See *Robert A Hansen Family Trust*, 279 Mich App at 486. Because we are not left with a definite and firm conviction that a mistake was committed, we conclude the trial court did not clearly err by finding Ottobre's complaint frivolous.[5] We affirm the trial court's award of sanctions under MCL 600.2591.

Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney

---

[5] Although plaintiff has not challenged the reasonableness of defendants' attorney fee request, we nevertheless note that the trial court did not provide a reviewable analysis of defendants' counsel's attorney fees. Counsel's affidavit and billable hours plus costs were submitted to the court and plaintiff, but the court's order did not include an analysis under the factors set forth in *Smith v Khouri*, 481 Mich 519, 529-534; 751 NW2d 472 (2008). See also *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281-282; 884 NW2d 257 (2016) ("In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors"). Plaintiff's failure to respond to the bill of costs and fees does not relieve the trial court from its obligation to apply the *Smith* framework and exercise its discretion after carefully reviewing the records when awarding attorney fees. See *Burton v State*, 340 Mich App 633, 649; 987 NW2d 879 (2022) (courts "may not award attorney fees . . .solely on the basis of what it perceives to be fair or on equitable principles.") (quotation marks and citation omitted).